## A07A1717. WALLS et al. v. MORELAND ALTOBELLI ASSOCIATES, INC.
### (659 SE2d 418)

BARNES, Chief Judge.

Clifford and Sylvia Walls sued Moreland Altobelli Associates, Inc. ("Moreland") for nuisance and trespass allegedly arising from construction on the Wallses' property. Following the close of evidence at trial, Moreland moved for a directed verdict. The trial court granted the motion as to all issues, and the Wallses appeal. For reasons that follow, we affirm in part and reverse in part.

" '[A] directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict.' " (Footnote omitted.) *Brown v. Coast Dental of Ga.*, 284 Ga. App. 244 (643 SE2d 740) (2007). On appeal, we review the trial court's grant of a directed verdict under the "any evidence" standard, construing the evidence favorably to the nonmovant. Id.

Viewed in this manner, the evidence shows that the Wallses live on a large parcel of property along Highway 330 in Jackson County. In approximately 1999, the Upper Oconee Basin Water Authority ("Water Authority") obtained the land across the highway from the Wallses' residence to build a water reservoir. The Water Authority hired Moreland, a full-service civil engineering firm, to help manage the reservoir construction and related projects.

In the spring of 2001, Hank Collins, a construction manager with Moreland, began overseeing several reservoir-related construction projects to be completed by Maxey Brothers Construction. One of those projects involved raising and replacing a pre-existing drainage pipe located under Highway 330 and regrading the area to allow proper drainage from the Wallses' property to the reservoir side of the road. Before the project began, a Moreland representative asked the Wallses to grant the Water Authority a temporary easement along the front of their property that would permit workers to enter and complete the drainage work. The representative assured Mrs. Walls that the construction would not disturb any trees on the property and would only minimally affect the land. Based on these assurances, Mrs. Walls signed the easement.

When Maxey Brothers commenced work on the Wallses' property in September 2001, the Wallses observed workers cutting down trees. Mrs. Walls immediately called Collins, who apologized, stating that the trees should not have been cut and that "he would stop it immediately." Collins also promised that Moreland would replace or pay for the cut trees.

Although Mrs. Walls discussed the tree issue with Collins several times over the next year, Moreland did not compensate the Wallses

for the tree loss. In the meantime, the Wallses noticed that during heavy rains, standing water would accumulate on their property near the opening to the new drain pipe. Mrs. Walls could not recall at trial when she first noticed the water problem. She testified, however, that they had never experienced standing water before September 2001.

Mrs. Walls complained about the water to Collins and wrote to Moreland in June 2003 about both the water and the tree removal, but Moreland did not remedy her concerns. Instead, it referred her complaints to the Water Authority, which investigated the situation. The Water Authority offered to repair the drainage area along the Wallses' property and pay $100 to settle the tree claim. The Wallses rejected the offer.

The Wallses eventually sued Moreland for trespass and nuisance, alleging that a work crew supervised by Moreland cut trees on their property without permission, improperly installed the drain pipe, and created a standing water nuisance. In addition to compensatory damages, the Wallses sought punitive damages and attorney fees.

1. *Standing water and drainage issues*. The trial court properly directed a verdict for Moreland on the Wallses' claims relating to standing water and drainage. Regardless of whether these claims sounded in nuisance, trespass, or negligence, causation was a central element. See *Grinold v. Farist*, 284 Ga. App. 120, 122 (2) (643 SE2d 253) (2007); *Oswell v. Nixon*, 275 Ga. App. 205, 207 (1) (620 SE2d 419) (2005) (an "essential element of a tort claim under Georgia law is the existence of damage proximately caused by the alleged tortious act"). And the Wallses offered no evidence that the work overseen by Moreland caused the water problem.

We recognize that the Wallses' property experienced no standing water before the September 2001 construction. At trial, however, Mrs. Walls could not remember when the drainage problem began, relating it only to the "next heavy rain[ ]," and she did not report the water condition to Moreland until approximately one year after Maxey Brothers completed the project. Moreover, even if the Wallses had established a temporal connection between the September 2001 work and the standing water, "[t]he mere fact that one event chronologically follows another is alone insufficient to establish a causal relation between them." (Citation and punctuation omitted.) *Langston v. Allen*, 268 Ga. 733, 734-735 (3) (493 SE2d 401) (1997).

The Wallses offered no testimony — expert or otherwise — that the pipe installation and grading work performed by Maxey Brothers was inadequate or resulted in standing water. In fact, Mrs. Walls testified that she did not know who created the drainage problem. Moreland, on the other hand, presented evidence that Maxey Brothers constructed, sloped, and graded the area for proper drainage

away from the Wallses' property. Moreland also produced evidence that following the project's completion, a utility company laid underground cable in the area and Jackson County installed a water line along the road, both of which altered the grade. And Collins testified that Mrs. Walls first complained about the water problem *after* the utility company worked in the area.

Because the Wallses failed to link the work performed by Maxey Brothers and Moreland to the drainage problem, they did not establish causation. Accordingly, the trial court properly directed a verdict for Moreland on all claims relating to standing water and drainage. See *Langston*, supra, 268 Ga. at 734-735 (3); *Grinold*, supra, 284 Ga. App. at 122-123 (2).

2. *Tree cutting.* The trial court erred, however, to the extent it granted a directed verdict on the Wallses' claim for trespass based on the tree cutting. "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." OCGA § 51-9-1. Cutting trees on property owned by another may result in a trespass under this Code section. See *Gloss v. Jacobs*, 86 Ga. App. 161, 166 (71 SE2d 253) (1952).

The evidence shows that Moreland and Maxey Brothers had permission to enter the Wallses' property and perform work related to the pipe installation. The Wallses, however, objected to any tree cutting, and a Moreland representative assured Mrs. Walls that the work would not affect any trees. Mrs. Walls also testified that when she confronted Collins about the tree cutting, he stated that trees should not have been cut. Under these circumstances, a jury could find that the tree cutting exceeded the permitted entry onto the Wallses' property.

In moving for a directed verdict on this claim, Moreland argued that Maxey Brothers and the workers who actually felled the trees — not Moreland — committed the trespass. Moreland, however, was responsible for overseeing Maxey Brothers' work and ensuring that it complied with the project plans, which, according to at least some evidence, did not involve tree cutting. Moreover, Collins knew that Maxey Brothers planned to cut trees on the Wallses' property, but did nothing to stop the work. Based on this evidence, a jury could find Moreland liable for trespass. See OCGA § 51-9-1; *Chattahoochee Brick Co. v. Goings*, 135 Ga. 529, 535 (69 SE 865) (1910) (" 'One who aids, abets, or incites, or encourages or directs, by conduct or words, in the perpetration of a trespass is liable equally with actual trespassers.' "); *Evans v. Cannon*, 34 Ga. App. 467, 472 (130 SE 76) (1925) (" 'One who procures or assists in the commission of a trespass or does any act which ordinarily induces its commission is liable therefor as the actual perpetrator.' ").

Finally, Moreland argues that a directed verdict on the tree-cutting claim was proper because the claim "actually sounded in professional negligence" and the Wallses offered no expert testimony regarding the standard of care. We fail to see how this claim raises professional negligence allegations. The Wallses contend that Moreland engaged in trespass by allowing Maxey Brothers to cut trees on their property without permission. The claim does not involve interpretation of design plans or plats, as Moreland contends. Rather, the Wallses assert that they explicitly denied permission to cut trees in connection with the easement work, that Moreland knew about the planned tree cutting, and that it did not prevent the destruction, despite its oversight responsibility.

The Wallses' tree-cutting claim does not bring professional judgment or expertise into play. See *Upson County Hosp. v. Head*, 246 Ga. App. 386, 389 (1) (540 SE2d 626) (2000) (professional malpractice claim implicates professional judgment and skill). The trial court, therefore, erred in directing a verdict for Moreland on this claim.

3. *Punitive damages and attorney fees.* In moving for a directed verdict, Moreland argued below that the evidence demonstrated no wilfulness, wantonness, bad faith, or litigious conduct that might support an award of punitive damages or attorney fees. The trial court evidently agreed and directed a verdict on these claims. The Wallses do not specifically challenge this ruling on appeal or argue that the evidence authorized punitive damages and attorney fees. Accordingly, to the extent the Wallses intended to challenge the directed verdict as to these two claims, that challenge has been abandoned, and they have not shown error. See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned.").

*Judgment affirmed in part and reversed in part. Smith, P. J., and Miller, J., concur.*

DECIDED MARCH 10, 2008 —

*Larry E. Stewart*, for appellants.
*Carlock, Copeland, Semler & Stair, Kent T. Stair, Cheryl H. Shaw*, for appellee.