**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 21, 2025**

# In the Court of Appeals of Georgia

A25A1338. SLATE et al. v. TURNER.

HODGES, Judge.

Plaintiffs Jason Slate and Danielle Cannon, individually and as the natural guardians and next friends of Isabella Sage Slate, a minor (collectively the "appellants"), appeal the trial court's order granting summary judgment to defendant Phyllis Turner in this case where Turner was hit from behind by defendant Brandon Eason. The appellants argue that the trial court erred in granting summary judgment because questions of fact exist regarding whether Turner should have seen Eason approaching from behind and thus avoided the collision and whether Turner maintained a safe distance behind the vehicle in front of her. For the reasons below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact as to any essential element of a claim and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). If a defendant shows there is no evidence in the record to create a jury issue on at least one essential element of the plaintiff's claim, the entire claim "tumbles like a house of cards" and "[a]ll of the other disputes of fact are rendered immaterial." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

> A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. On appeal from a grant or denial of summary judgment, we conduct a de novo review of the law and evidence and view the evidence in the light most favorable to the nonmoving party. See *Hunsucker v. Belford*, 304 Ga. App. 200 (695 SE2d 405) (2010) (reversing denial of summary judgment because no evidence afforded a reasonable basis to conclude that negligent driving caused a collision).

So viewed, this case arises from an automobile collision that occurred on February 16, 2022. Turner was driving her Toyota Prius northbound on I-85 in Troup County. Isabella, a minor and Turner's granddaughter, was a passenger in the vehicle. As Turner was driving, she approached a construction zone in which two lanes merged to become a single lane. Turner merged into the single lane and slowed from approximately 60 miles per hour to 6.8 miles per hour over the course of 20-30 seconds. Turner deposed that she would have checked her side-view mirror to merge into the left lane, but she did not recall if she checked her rear-view mirror. She was focused on the slowed traffic in front of her. According to Turner, the cars in front of her slowed, and she "could tell there were cars . . . that had stopped in front" of the vehicle directly in front of her. She "had [her] foot on the brake and progressively intensified the pressure in keeping with the traffic around [her]" and had a "pretty good amount of space in front of [her]" as she was coming to a stop. The construction zone had an emergency lane to Turner's left and a lane cordoned off with rubber cones to her right.

Eason, who is not a party to this appeal, was driving his Toyota Camry northbound on I-85. Eason admitted that he fell asleep while driving. As a result, Eason did not slow down when approaching the slowed construction traffic and struck Turner's vehicle from behind. Turner did not see or hear Eason's vehicle approaching before the impact. After being hit from behind, Turner's vehicle rotated counterclockwise and the rear portion of its passenger side struck the rear portion of the vehicle in front of Turner, driven by non-party Fahmee Hasan. Eason's vehicle then struck a cable barrier and Turner's Prius a second time. Eason received a citation for following too closely and paid the fine.

Isabella sustained serious injuries during the crash and was evacuated by air to the hospital. The appellants are Isabella's parents, and Cannon is Turner's daughter. The appellants sued Eason and Turner, originally naming Turner "based on the anticipated allegations of Defendant Eason and in case any fault is apportioned to Defendant Turner." The appellants subsequently amended their complaint to include a claim for negligence against Turner, alleging that Turner failed to: (i) use reasonable care while operating her vehicle; (ii) pay attention to the traffic around her; or (iii)

leave enough space between her vehicle and the one in front of her, thus contributing to the collision and proximately causing Isabella's injuries.

Turner moved for summary judgment. The trial court granted Turner's motion, specifically finding "no Georgia case or statute delineating a motorist's duty to keep a proper lookout to the rear, other than in the context of making a lane change." The trial court further found no evidence in the record that evasive action by Turner would have avoided any of the three collisions or resulted in less risk to her passengers or others. The appellants appeal from the trial court's grant of summary judgment.

In their sole enumeration of error, the appellants argue that the trial court erred in granting Turner's motion for summary judgment because "[a]ppellants presented numerous material facts that . . . would allow a reasonable jury to find that [Turner] failed to meet the standard of ordinary care." We disagree.

> To state a cause of action for negligence in Georgia, a plaintiff must show (1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage to plaintiff's legally protected interest resulting from the breach.

(Citation and punctuation omitted.) *Hunsucker*, 304 Ga. App. at 201 (1). "[T]he mere fact that an accident happened and the plaintiff may have sustained injuries or damages affords no basis for recovery against a particular defendant unless the plaintiff carries the burden of proof and shows that such accident and damages were caused by specific acts of negligence on the part of that defendant." (Citation and punctuation omitted.) Id. at 202 (1). "Although issues of negligence are generally left to the jury, in cases where the alleged negligent conduct is susceptible to only one inference, the question becomes a matter of law for the court to determine." (Citation and punctuation omitted.) Id. at 201 (1). Indeed, "[a]lthough the issue of whether a driver has exercised ordinary care under the circumstances is usually a jury question, where the undisputed facts show liability or the lack thereof such that reasonable minds cannot differ, the issue may be decided as a matter of law." *Rios v. Norsworthy*, 266 Ga. App. 469, 471 (1) (597 SE2d 421) (2004).

1. The appellants first argue that "given the circumstances, Turner had a duty to exercise ordinary care to avoid Eason's negligence," and she failed to exercise that duty because "she never once checked her . . . mirrors" and "failed to notice Eason's vehicle approaching at a high rate of speed" as she slowed down and merged into one

lane due to the roadway construction. The appellants, however, concede that they "could not find a Georgia case that specifically notes a requirement to keep a lookout behind the vehicle[.]" Rather, they rely on general law regarding a driver's duty to exercise ordinary care to avoid a collision in an effort to establish that a duty exists for leading vehicles in rear-end collisions to keep a lookout behind them. See, e.g., *Atlanta Coca-Cola Bottling Co. v. Jones*, 236 Ga. 448, 450 (224 SE2d 25) (1976); *Kennison v. Mayfield*, 359 Ga. App. 52, 70-71 (3) (b) (856 SE2d 738) (2021); *Kicklighter v. Jones*, 202 Ga. App. 654, 654-655 (415 SE2d 302) (1992). None of those cases delineates such a duty, and they do not preclude the trial court's grant of summary judgment to Turner given the circumstances in this case and the record before us.[1]

It is true that "every driver of a motor vehicle must exercise ordinary care in the control, speed and movements of his vehicle to avoid a collision after he sees or by ordinary diligence could have seen that one is threatened by the active negligence of another." (Citation and punctuation omitted.) *Kicklighter*, 202 Ga. App. at 655.

---

[1] In their reply brief, the appellants cite to several non-binding cases from other jurisdictions to support their principle, yet none of those non-binding cases indicate that the duty to maintain a lookout to the rear includes the extraordinary circumstances of remaining on constant lookout for the illegal acts of other drivers, much less a driver falling asleep at the wheel and rear-ending a vehicle slowed due to a construction zone.

However, "[t]here is no absolute duty on a driver to avoid a collision; rather, all drivers are charged with the duty to exercise ordinary care under the circumstances." *Rios*, 266 Ga. App. at 470 (1).

> [O]ne who is himself rightfully using the highway or street has a right to the use thereof, which is superior to that of one who is violating traffic regulations, and, in the absence of knowledge, he is not required to anticipate that some other user will unexpectedly violate the law or rule of the road and create a situation of danger.

(Citation and punctuation omitted.) Id. Indeed, "in the absence of knowledge acquired by the use of ordinary care, a driver rightfully using the road is not required to exercise extraordinary care to foresee the negligence of other drivers or to anticipate the possibility that another driver will unexpectedly violate traffic regulations and create a dangerous situation." Id. at 470-471 (1). "In other words, where a driver rightfully using the road and exercising ordinary care fails to discover and avoid the dangerous consequences of another driver's unexpected traffic violation, he is not negligent merely because he would have discovered and avoided those consequences if he had employed a heightened degree of care." Id. at 471 (1).

Applying these principles, the evidence is undisputed that Eason fell asleep at the wheel and crashed into the back of Turner's vehicle. Eason was cited for following too closely and paid the traffic fine, essentially pleading guilty to the charge and establishing a prima facie case of Eason's negligence. See *Hayes v. Crawford*, 317 Ga. App. 75, 79 (730 SE2d 26) (2012) (noting that pleading guilty to a traffic violation establishes a prima facie case of negligence that may be rebutted by evidence of another's negligence). It is further undisputed that Turner was forced to merge into one lane and slow from 60 miles per hour to 6 miles per hour in a span of 20-30 seconds due to the construction site on the highway. The evidence is undisputed that Turner was focused on the hazards and slowing traffic in front of her, recognizing that many cars in front of her had stopped, as she merged into the single lane. The evidence is again undisputed that the first knowledge Turner had of the dangerous situation created by Eason's traffic violation was the instant Eason struck her vehicle, forcing her car to spin and hit the car in front of her. Under these circumstances, the duty to exercise ordinary care did not require that Turner constantly check her rear-

view mirror to anticipate the possibility that a sleeping driver would fail to slow his vehicle at the construction site and crash into the rear of her vehicle.[2]

2. Even if Turner, in the exercise of ordinary care, had a duty to constantly check her rear-view mirror and should have known about Eason's traffic violation and the dangerous condition it posed, the appellants have failed to produce any evidence that: (i) Turner could have taken evasive action to avoid the collision with Eason and such evasive action would have minimized Isabella's injuries, or (ii) Turner failed to leave enough space between her vehicle and the one in front of her to avoid the collision with Hasan's vehicle and this contributed to the severity of Isabella's injuries. See *Kicklighter*, 202 Ga. App. at 655 (finding directed verdict was appropriate

---

[2] The appellants also argue that a duty to keep a lookout to the rear proceeds from the Georgia Driver's Manual, which instructs drivers to "[u]se your rear view mirror and side mirror to constantly check the traffic around you[.]" See *City of Atlanta v. MARTA*, 262 Ga. 743, 746 (425 SE2d 862) (1993) (noting that "there is an implied, continuing duty on the part of all those who avail themselves of the privilege of driving on the roadways of this state to know the meaning of every traffic signal, and this knowledge may be gained from a study of the Georgia Driver's Manual"). However, neither the general references to defensive driving practices in the Georgia Driver's Manual nor the narrow holding in *City of Atlanta* create a legal duty for a driver to keep a constant lookout to the rear, and we are unwilling to create such a duty given the circumstances of this case.

when no evidence was produced that the appellee could have avoided the collision in the exercise of ordinary care); *Tallman Pools of Ga. v. James*, 181 Ga. App. 341, 342-343 (352 SE2d 179) (1986) (physical precedent only) (reversing denial of summary judgment because the plaintiff responded with "mere conclusory statements" and failed to produce specific facts, by means of expert opinion or other evidence, showing that the defendant could have prevented a collision).

It is well settled that "[n]egligence is not to be presumed, but is a matter for affirmative proof. In the absence of affirmative proof of negligence, we must presume performance of duty and freedom from negligence." (Citation and punctuation omitted.) *Kicklighter*, 202 Ga. App. at 655. In that vein, "[b]efore any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury." *Grinold v. Farist*, 284 Ga. App. 120, 121 (1) (643 SE2d 253) (2007). "[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *Hunsucker*, 304 Ga. App. at 202 (1).

The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

(Citation and punctuation omitted.) *Grinold*, 284 Ga. App. at 121-122 (1).

In the present case, the appellants assert that "had Turner been aware of Eason's approaching vehicle, she could have safely moved to the left [emergency] shoulder or the right lane [closed with rubber cones] to avoid the collision." They further assert that because Turner "crashed into the vehicle ahead of her, there is an inference from the evidence, when viewed in the light most favorable to Appellants as the non-movants, that Turner may not have been maintaining a safe distance behind that vehicle, which contributed to the severity of the wreck." The appellants' assertions, however, rely on the mere possibility that Turner *might* have avoided the accident or that she could *possibly* have been following too closely, perhaps contributing in some way to Isabella's injuries. These conjectures, without

substantiating facts, do not create a jury question.[3] See *Kicklighter*, 202 Ga. App. at 655

("A review of the record demonstrates that appellant produced *no* evidence to

authorize a finding that, in the exercise of ordinary care, appellee could have avoided

---

[3] Although the appellants note in their appellate brief that they have hired a collision reconstructionist "who will explain the dynamics of the crash to the jury[,]" it was incumbent upon the appellants to provide sufficient evidence supporting their inferences in response to Turner's motion for summary judgment. See *Tallman Pools*, 181 Ga. App. at 343 ("When a motion for summary judgment is made and supported by evidence, respondent may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); see also *Lau's Corp.* 261 Ga. at 491 (noting that if a defendant points out "by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case[,]" the "nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue").

The appellants reference a video in their brief that they purportedly presented to the trial court via a Dropbox link in their motion for reconsideration to demonstrate how easily Turner could have avoided the collision. Consideration of the video by the trial court would have been inappropriate. See *Samdperil v. Watson*, 359 Ga. App. 129, 132 (2) (856 SE2d 768) (2021) (reiterating that arguments raised for the first time in a motion for reconsideration following the grant of summary judgment are not preserved for appeal). In addition, this Court "will review only evidence presented to the trial court before its ruling on the motion [for summary judgment]." (Citation and punctuation omitted.) *Paul v. Joseph*, 212 Ga. App. 122, 125 (2) (441 SE2d 762) (1994). We have not viewed the link provided in the appellants' brief or considered the video on appeal.

the collision after she saw or should have seen that appellant had entered into the intersection and was crossing appellee's lane of traffic.") (emphasis in original).

Indeed, the trial court in this case properly concluded:

[W]hile the Plaintiff[s] contend[] that Defendant Turner's failure to perceive the danger approaching from her rear resulted in her failing to take evasive action to avoid Eason's negligence, there is no evidence in the record that an alternative course of action by Turner would have been sufficient to avoid any of the three collisions or whether it might have resulted in greater risk to her passengers or others. There is no testimony, expert or otherwise, as to the distance between the Turner vehicle and the Hasan vehicle prior to the first impact between Eason and Turner, as to the severity of the impact between the Turner and Hasan vehicles, nor as to whether or to what extent the third impact may have contributed to the Plaintiff's injuries.

In fact, Turner deposed that although she did not remember how many car lengths were between her and Hasan, she "had a pretty good amount of space in front of [her] as [she was] coming to a stop" and she knew that traffic in front of Hasan had stopped. Turner did not strike Hasan's car until Eason hit her from behind. The fact that Turner could not articulate the exact amount of space between her car and Hasan's vehicle, the last time she checked her rear-view mirror, or what she could have done to avoid the collision simply do not create a genuine issue of material fact

14

as to Turner's liability or excuse the appellants from presenting specific facts to support their theories of recovery.

In short, the duty to exercise ordinary care did not require that Turner constantly check her rear-view mirror to anticipate the possibility that a sleeping driver would violate traffic laws and crash into the rear of her vehicle as she was merging into one lane at a construction site and focusing her attention at the slowed traffic in front of her. Moreover, even if such a duty existed, there was no evidence even remotely suggesting that Turner was guilty of any negligence which might have contributed to the collision or Isabella's injuries. Considering the evidence in the light most favorable to the appellants as the non-movants, we conclude that summary judgment in favor of Turner was warranted.

*Judgment affirmed. McFadden, P. J., and Pipkin, J., concur.*