**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A2074. YEARTY v. SCOTT HOLDER ENTERPRISES, INC.

McMILLIAN, Judge.

After Darla J. Yearty badly burned her hand in a kitchen fire, she sued Scott Holder Enterprises ("Holder Enterprises") for installing an allegedly defective smoke detector alarm system that she contends failed to alert her soon enough to the fire. After the trial court granted summary to Holder Enterprises, Yearty appealed, asserting that genuine issues of material fact remain as to whether Holder Enterprises's negligence was the proximate cause of her injuries. Because this case presents the relatively rare situation where the plaintiff cannot show that the defendant's alleged negligence was the cause in fact, much less, the proximate cause of her injuries, we affirm the trial court's grant of summary judgment.

Summary judgment is appropriate when the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]" OCGA § 9-11-56 (c). A defendant is entitled to obtain summary judgment "by showing an absence of evidence supporting at least one essential element of the plaintiff's claim." (Citation and punctuation omitted.) *Pham v. Black*, 347 Ga. App. 585, 586 (820 SE2d 209) (2018). However, "[t]he defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact." (Citation and punctuation omitted.) *Meadows v. Diverse Power, Inc.*, 296 Ga. App. 671,671 (675 SE2d 571) (2009). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Med. Center of Central Ga., Inc. v. Macon Health Center, Inc.*, 345 Ga. App. 879, 880 (815 SE2d 199) (2018).

So viewed, the evidence[1] demonstrates that in August 2007, Holder Enterprises installed a security system and smoke monitoring system in Yearty's home. According to Yearty, she did not talk with Holder Enterprises about "any type of

---

[1] The only evidence in the record comes from Yearty's deposition.

2

specifics" about the system but "hired [the company] to put systems in to protect . . . me and my children in my house." During the first several months after the system was installed, Yearty complained to Holder Enterprises that the system was not working and someone from the company "came to [her] house ten, twelve, fourteen times, trying to fix the system so that it would work." The last time a Holder Enterprises employee worked on the system before the fire was in November 2007,[2] and after spending "the day [at Yearty's home, the worker] called [her] and said that he had resolved all of the issues; he had done the call-in with the service and that everything responded and that he was through."

Yearty testified that on the evening of August 18, 2008, she received a phone call while she was frying chicken on the stove. After completing her phone call, she checked on the chicken and turned the chicken pieces over to continue cooking. She then sat on the sofa and "nodded off." She estimated that she was asleep about three to four minutes, when she awoke to the smell of smoke. Because of the smoke, she could not tell if it was the pan that was burning or the chicken, but she recalled from

---

[2] Although in her deposition Yearty recalled the date as in November 2008, which would have been after the fire, she states in her brief in response to Holder Enterprises's motion for summary judgment and her appellate brief that the date of the last repair on the system was actually November 2007.

3

her fire safety training that water should not be used to extinguish a grease fire. Yearty could not reach the baking soda that she kept in a cabinet over the microwave because of the heat from the fire, so she instead poured flour on the pan.[3] According to Yearty, because of the smoke, she

> couldn't see the knob at the moment, to just turn [the stove] off . . . I was really scared to put my hands up under there, but I knew I didn't have a choice. So . . . I took [one] hand to turn the knob off[,] which was right beside the pot. [The other] hand, I had the top, trying to simultaneously put the top on the pan and turn the knob off; and it was just like lava. It just bubbled over. And it bubbled on my right hand, which was turning the knob off.

Yearty's right hand was severely burned in the incident. Approximately, two years after the incident, in July 2010, Yearty had the smoke alarm system evaluated by a different security company, which determined that a card to activate the system was missing.

Yearty filed a complaint for personal injuries and damages, and Holder Enterprises answered, denied liability, and subsequently filed a motion for summary

---

[3] Yearty normally kept a fire extinguisher at home, but at the time of the fire she had moved the extinguisher to her place of business, which was due for a fire inspection and was short one extinguisher.

judgment.[4] In granting summary judgment to Holder Enterprises, the trial court determined that there was no genuine issue of material fact as to proximate cause, and thus the company was not liable in negligence for Yearty's injuries as a matter of law. The trial court found that Yearty

> failed to present any fact to establish [Holder Enterprises's] negligence was the proximate cause of her injuries. Specifically, [Yearty] failed to show that [Holder Enterprises] should have foreseen the actions taken by [Yearty] that resulted in her injuries. [Yearty] was injured neither by the alleged breach of the duty related to the installation, maintenance, or operation of the System nor by its failure to alert her to the grease fire on her stove. [Yearty] was injured when she voluntarily undertook to extinguish the grease fire in her kitchen by dumping flour in the pan, covering the pan with a lid, and then removing the pan from the burner.

On appeal, Yearty asserts that had Holder Enterprises properly installed the smoke detector she would have awoken earlier when there was a minimal amount of smoke, thus allowing her "an opportunity to go to the stove and turn off whatever was burning, and that would have kept [her] hand from getting burned." She further argues that it was foreseeable that she would suffer an injury without a properly

---

[4] Holder Enterprises also filed a motion to dismiss contending that the statute of limitations barred recovery, which the trial court denied.

functioning smoke detector and that Holder's failure to correctly install the system was the primary factor in causing her injury.

"It is well established that to recover for injuries caused by another's negligence, a plaintiff must show four elements: a duty, a breach of that duty, causation[,] and damages." (Citation and punctuation omitted.) *Johnson v. American Nat. Red Cross*, 276 Ga. 270, 272 (578 SE2d 106) (2003). Causation is further broken down into two elements: cause in fact and proximate cause. *City of Richmond Hill v. Maia*, 301 Ga. 257, 258 (1) (800 SE2d 573) (2017) ("A plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury.").

Turning first to the question of cause in fact, in order to show that a defendant's negligence is a cause in fact of a plaintiff's injuries, "[the] plaintiff ordinarily must prove that, but for this conduct, he would not have sustained the injury. (Citation omitted.) *Strength v. Lovett*, 311 Ga. App. 35, 43-44 (2) (b) (714 SE2d 723) (2011). In other words, "[t]he defendant's conduct is not a cause of the event, if the event would have occurred without it." (Citation and punctuation omitted.) Id. at 44 (2) (b). Here, the fire started as a result of Yearty's leaving chicken frying in hot oil on her stove while she fell asleep. Even assuming for purposes of

6

summary judgment that the smoke detector was defectively installed, Yearty has pointed to no evidence, beyond her own bare assertion at her deposition, that a working smoke detector would have alerted her any sooner to the fire, much less that it would have alerted her at a sufficiently early interval to have allowed her to use her bare hand to turn off the stove without danger.[5] Without any supporting factual evidence, Yearty's testimony in this regard is merely conjecture or speculation, thus giving the jury no basis on which to render a verdict in her favor.

"As we have held, no inference of fact may be drawn from a premise which is wholly uncertain." (Citation and punctuation omitted.) *Ogletree v. Navistar Intl. Transp. Corp.*, 245 Ga. App. 1, 6 (1) (535 SE2d 545) (2000). Rather,

> [t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly

---

[5] The only evidence in the record about the timing of the fire is Yearty's testimony that she was asleep for about three to four minutes before she woke up to the smoke. Presumably, Yearty would not have purposely left the oil unattended if it had already caught fire before she fell asleep, so when would have a properly functioning alarm have sounded? A minute earlier? Two minutes earlier? Or would the smoke alarm have sounded after Yearty naturally awoke?

7

balanced, it becomes the duty of the court to grant summary judgment
for the defendant.

(Citation omitted.) *Whiteside v. Decker, Hallman, Barber & Briggs, P.C.*, 310 Ga. App. 16, 18-19 (712 SE2d 87) (2011). Here, Yearty has not pointed to any evidence showing that but for a non-functioning smoke detector, Yearty would not have sustained her injuries. Because no genuine issue of material fact exists as to whether the defective smoke detector was the cause in fact of Yearty's injuries, the trial court properly granted summary judgment.

Moreover, even if the alleged failure of the smoke detector could somehow be deemed a cause in fact, Yearty cannot establish that it proximately caused her injuries. Proximate cause is defined as "that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." (Punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003).

Inextricably entwined with concepts of negligence and proximate cause is a notion of foreseeability. To that end, the well-established doctrine of intervening causes states that there can be no proximate cause where there has intervened between the act of the defendant and the injury to the plaintiff, an independent act or omission of someone other than the

8

> defendant, which was not foreseeable by defendant, was not triggered
> by defendant's act, and which was sufficient of itself to cause the injury.

(Citation and punctuation omitted.) *Maia*, 301 Ga. at 258-59 (1).

Once Yearty awoke, she took it upon herself to extinguish the fire by throwing flour on it and reaching her bare hand into the smoke next to a pot of hot oil, with what she described as a "little fire" and smoke "boiling out," even though she could not see clearly what was on fire. Yearty testified that she bought the smoke detector system to protect her family and herself from fire danger, thereby preventing or reducing any resulting damages and injury. Yet when Yearty became aware of the fire, she did not attempt to avoid injury, but, instead, she approached the fire and actively increased her risk of harm by exposing her bare skin to the potential of spilled, boiling oil. Although she contends she had no choice but to reach her hand in to turn off the stove because otherwise her house would have burned down, she points to no evidence to create a jury issue as to this contention, beyond stating that she lived "eight miles out in the country[]," and she certainly has not pointed to any evidence to support a finding that she was compelled to use her bare hand to accomplish this task. Therefore, Yearty's own decision to put her unprotected hand near a pot of flaming, smoking oil was an intervening factor between any alleged

9

smoke alarm malfunction and her injuries. And it cannot be considered foreseeable that an individual who sought to avoid danger by installing a smoke alarm would instead increase her own risk of harm by placing her exposed, bare flesh in close proximity to a pot of burning oil.

Consequently, this case is not one where the injury was the natural and probable consequence of wrongful conduct that should have been foreseen by the defendant, and thus Yearty cannot establish the element of proximate cause. Cf. *Wadkins v. Smallwood*, 243 Ga. App. 134, 139 (3) (530 SE2d 498) (2000) (upholding jury verdict finding that alleged failure of smoke detector was not proximate cause of injury to one adult and child where adults did not sleep through the fire and had sufficient time to remove other children from the apartment and reenter it several times); *Wilkerson v. Alexander*, 208 Ga. App. 83, 86 (2) (429 SE2d 685) (1993) (summary judgment warranted where record contained nothing to establish that the absence of a smoke detector was the proximate cause of victim's death where evidence showed that victim did not sleep through the fire; therefore, "there was

nothing to indicate that the only reason she did not survive was because no alarm sounded.").[6]

*Judgment affirmed. Reese, J., concurs. Barnes, P. J., dissents.*

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2**

---

[6] The case of *Housing Auth. of City of Atlanta v. Jefferson*, 223 Ga. App. 60, 62 (2) (476 SE2d 831) (1996) (physical precedent only), upon which Yearty relies, is not binding precedent and is readily distinguishable. There, the housing authority failed to maintain a smoke detector in its rental property although it had a statutory duty to do so, and a three-year-old child was injured when a fire broke out in the house his family rented from the authority. His aunt, who was babysitting, was able to escape, but the fire department was required to don protective clothing and breathing gear to rescue the child. This Court found that questions of fact existed as to whether the presence of a smoke detector would have prevented or lessened the injury to the child. However, there was no evidence that the child took any action to expose himself to harm, thereby proximately causing his own injuries, as Yearty did in this case.

A18A2074. YEARTY v. SCOTT HOLDER ENTERPRISES.

BARNES, Presiding Judge, dissenting.

Because I believe that there remains a genuine issue of material fact as to whether the improperly installed smoke alarm's failure to alert Yearty to the presence of smoke resulted in her injury, I must respectfully dissent to the majority opinion holding otherwise.

> One who undertakes, . . . for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if: (a) his failure to exercise such care increases the risk of

such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.

Section 323 of the Restatement (Second) of Torts. And, "[d]amages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered." OCGA § 51-12-9. See *Collie v. Hutson*, 175 Ga. App. 672, 673 (3) (334 SE2d 13) (1985). Although the majority and Holder Enterprises contend that Yearty was not injured by a breach related to whether the smoke detector functioned properly but by Yearty's voluntary choice to confront the fire, "[t]he purpose of a smoke detector is to provide an early warning of fire and to reduce the damages and injury resulting therefrom." *Housing Authority of City of Atlanta v. Jefferson*, 223 Ga. App. 60, 62 (2) (476 SE2d 831) (1996). In this case, the smoke alarm did not do that for which it was intended, and, in fact, would never have alerted Yearty to the presence of smoke because there was evidence that, despite Holder Enterprises's assurances otherwise, it was improperly installed. Given this, and the evidence that Yearty's response to the grease fire was related to her inability to see because of the presence of copious amounts of grease smoke, "[h]ad a smoke detector been [working] to provide an early alarm, it is possible that [Yearty] would have been [alerted before the smoke impeded her vision], thereby avoiding or lessening the

2

extent of [her] injuries." *Housing Authority of City of Atlanta,* 223 Ga. App. at 62 (2).

See *Newsome v. LinkAmerica Express*, 336 Ga. App. 800, 802-803 (786 SE2d 692)

(2016) (where, while temporarily blinded by the sun, a motorist drove into a tractor

alleged to be illegally parked on the street, it was an issue for the jury whether the

driver was barred from recovery by contributory negligence).

A smoke alarm is intended to warn us of the presence of smoke. Our common

experience tells us that people do not merely run at the presence of smoke but rather

ascertain whether there is a fire and attempt to mitigate ensuing harm by perhaps

attempting to ensure the safe escape of loved ones or to protect the home or valued

or irreplaceable possessions. This Court should decline to decide the folly or wisdom

of such actions unless reasonable minds cannot differ as to the conclusions to be

reached. See *Villanueva v. First American Title Ins. Co.*, 313 Ga. App. 164 (721 SE2d

150) (2011) ( summary judgment as to causation appropriate only when "reasonable

persons could not differ as to both the relevant facts and the evaluative application

of legal standards (such as the legal concept of 'foreseeability') to the facts") (citation

and punctuation omitted). Thus, "other than in plain, palpable, and undisputed cases,

questions of negligence [and] proximate cause, including the related issue[] of . . .

lack of ordinary care in avoiding the consequences of another's negligence, . . . are

for the jury." (Punctuation and footnote omitted.) *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 SE2d 691) (2008).

For these reasons, I must respectfully dissent.